IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| ANGELA B. RAWLINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. |
| | ) | 3:10-CV-00046 |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Angela B. Rawlings, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

1

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be GRANTED; that Defendant's motion for summary judgment (docket no. 12) be DENIED; and that the final decision of the Commissioner be REVERSED and REMANDED for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on August 23, 2006, claiming disability due to congestive heart failure, obesity, obstructive sleep apnea, asthma, anxiety and hypertension, with an alleged onset date of July 29, 2006. (R. at 12, 144.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 98-103; 110-121.) On December 18, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 23-51.) On March 31, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 9-22.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-5.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

# III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA at the time of application, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

*all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 15.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of congestive heart failure, obesity, obstructive sleep apnea, asthma, anxiety and hypertension, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 15-17.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that she can lift significantly less than ten pounds on a frequent basis; balance, crouch, crawl, squat, climb and/or stoop only occasionally; and she cannot work in environments with air pollutants/irritants, humidity or temperature extremes. (R. at 17-20.) Additionally, she must have limited contact with the general public and work in a stable environment with few changes in duties and/or settings. Id. The ALJ further limited Plaintiff to simple, routine work. Id.

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a nurse's aid because of the level of exertion required in the position. (R. at 20.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 20-21.) Specifically, the ALJ found that Plaintiff could work as a bench assembly worker, a call out operator, or a surveillance system monitor. (R. at 21.) Accordingly, the ALJ concluded that

6

Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 21-22.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ improperly discounted the opinions of Plaintiff's treating physicians; (2) the ALJ erred by posing a hypothetical to the VE that had no evidentiary support in the record; and (3) the ALJ improperly discounted Plaintiff's credibility. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 4-7.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 14-21.)

> **A.** **Plaintiff contends that the ALJ improperly discounted the opinions of Plaintiff's treating physicians.**

Plaintiff contends that the ALJ improperly discounted the opinions of three of Plaintiff's treating physicians, namely Dr. Odulana, Dr. Israel, and Dr. Ettigi. (Pl.'s Mem. at 4-5.) During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence.

7

See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Dr. Odulana opined that in an eight hour work day, Plaintiff could carry five pounds frequently; stand or walk for one hour; sit for thirty minutes; and occasionally climb, balance, stoop, crouch, kneel, or crawl. (R. at 283-286.) Dr. Israel found that Plaintiff had poor to no ability to deal with work stressors or to maintain attention/concentration; unlimited/very good ability to follow work rules; and a fair ability to make personal-social adjustments. (R. at 220-222.) Dr. Ettigi similarly found that Plaintiff had poor to no ability to deal with work stressors, function independently or maintain attention/concentration; good ability to follow work rules and relate to co-workers; and good ability to understand, remember, and carry out simple job instructions. (R. at 391-393.)

The ALJ considered the treatment notes of Drs. Ettigi and Israel, and assigned the reports of Drs. Ettigi and Israel little weight. (R. at 19-20.) The ALJ did not reject Drs. Ettigi and

Israel's opinions entirely; rather, he incorporated into his decision some of the environmental and mental limitations they recommended, such as performance and personal-social adjustments. (R. at 19-20, 54-55, 219-222, 391-393.) However, the ALJ otherwise accorded the opinions of Dr. Israel and Dr. Ettigi little weight for the stated reason that their opinions were not internally consistent and lacked support in the form of extensive treatment notes. (R. at 20.) The ALJ also accorded little weight to the form reports because opinions rendered on such check-box or form reports do not contain any explanation or supporting rationale for the stated conclusions. (R. at 20); see Hoke v. Chater, 1996 U.S. App. LEXIS 454 (4th Cir. Jan. 16, 1996) (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985) (less weight may be given to opinion of treating physician when the disability diagnosis is brief and conclusory)). Plaintiff concedes that there were no treatment notes of record for Dr. Israel. (Pl.'s Mem. at 5.) Plaintiff further concedes that "neither Dr. Israel or Ettigi had explanations for their findings in the body of their mRFCs" (Pl.'s Mem. at 5, R. at 391, 220-222).

While Plaintiff is correct that the record contains treatment notes from Dr. Ettigi (Pl.'s Mem. at 5, R. at 395-401), the ALJ properly discounted Dr. Ettigi's opinion because it contained internal inconsistencies and inconsistencies with the entirety of the medical evidence of record. (R. at 391-393.) Dr. Ettigi opined that Plaintiff had poor or no ability to function independently. (R. at 391.) However, the evidence of record shows that Plaintiff lived alone for extended periods of time, used public transportation without assistance, and planned a trip out of state. (R. at 187-190, 399). Dr. Ettigi's opinion is also inconsistent with the mental RFC ("mRFC") completed by Dr. Entin. In contradiction of Dr. Israel's assessment, Dr. Entin opined that Plaintiff's abilities to sustain ordinary routine without special supervision and her ability to set realistic goals or make plans independently of others were not significantly limited. (R. at 385-

9

387.)

Similarly, Dr. Israel's opinion was also inconsistent with other evidence of record. (R. at 220-222.) For example, during Plaintiff's initial exam by Dr. Israel in August 2006, her mood was reported as normal, her judgment and insight were "ok," and her attention was fair. (R. at 413.) Yet, in Dr. Israel's report from December 2006, he asserted that Plaintiff represented a very high risk of being a danger to herself and others. (R. at 221.) Nowhere in his or other medical records is there evidence to support such a dramatic change. Additionally, within the same report, Dr. Israel noted that Plaintiff had a fair ability to behave in an emotionally stable manner and relate predictably in social situations, which also seems to directly contradict his ultimate finding. (R. at 221.) Further, Dr. Entin's mRFC determination contradicts Dr. Israel's findings in that Entin found that Plaintiff's abilities to maintain socially appropriate behavior and to adhere to the standards of neatness and cleanliness were not significantly limited. (R. at 385-387.)

Additionally, Drs. Israel and Ettigi used Plaintiff's reported panic attacks as the basis for finding disabling mental limitations. (R. at 220-222, 391-394.) However, the Plaintiff conceded in 2006 that she had anxiety and panic attacks for "6+ years." (R. at 411-412.) The time frame includes years during which Plaintiff engaged in substantial gainful activity. (R. at 156.) Plaintiff does not allege significant deterioration of her condition between the time she worked with her condition and the onset of her disability, and thus she cannot claim that the condition is disabling. See Craig v. Charter, 76 F.3d 585, 596 n.7 (4th Cir. 1996) (superceded on other grounds) (citing Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970)). Accordingly, the alleged occurrence of the panic attacks may not credibly serve as the basis for Drs. Israel and Ettigi's findings.

10

However, the ALJ did not properly account for the opinion of Dr. Odulana. Though the ALJ acknowledged Dr. Odulana's report at the oral hearing on December 18, 2008 (R. at 40.), the ALJ did not specifically mention Dr. Odulana in his final decision, and therefore, he did not discuss what weight, if any, he gave to Dr. Odulana's opinion as required. While it appears that the opinion of Dr. Odulana also contained several inconsistencies with other evidence of record, the Court cannot substitute its judgment for that of the ALJ. For example, Dr. Odulana stated that Plaintiff could only sit for thirty minutes; however, Plaintiff testified that she can sometimes sit up to an hour, she attended church, went to the movies, went out to eat, and participated in a women's group. (R. at 19, 33, 45.) Dr. Odulana's notes also demonstrated significant weight loss by Plaintiff, and noted that Plaintiff exercised. (R. at 417-425.) Such an observation suggests that Plaintiff is able to stand for longer than an hour or sit for longer than thirty minutes. Dr. Odulana also asserted that Plaintiff's ability to see, hear, and speak were affected by her impairment. (R. at 285.) However, such contentions are not supported anywhere in the record, were not mentioned in any other reports, and Plaintiff never alleged such problems. Although Defendant asserts that the inconsistencies supported the ALJ's decision to not afford Dr. Odulana's report any weight, the Court cannot simply accept that argument, as it appears the ALJ never considered the report at all in making his final decision. (Def.'s Mem. at 14-15.)

When an ALJ evaluates an opinion of any medical source -- whether treating or nontreating -- he is required to "explain in the decision the weight given" thereto and "give good reasons in [his] . . . decision for the weight." 20 C.F.R. §§ 416.927(f)(2)(ii); 416.927(d)(2). If the ALJ does not assign weight and provide persuasive reasons for that assignment, then the court is unable to determine whether the ALJ's conclusion is sufficiently supported by the evidence of record. See Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984) ("We

cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence."). Absent a statement of the ALJ's reasons for his assignment of a particular weight, the Court cannot and should not infer from the record reasons to support the ALJ's conclusion. See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's opinion should have been evaluated based solely on the reasons stated in the decision."). Dr. Odulana was the only doctor to provide a physical RFC, whereas the remaining treating physicians (Drs. Israel and Ettigi) addressed mental issues, and the physical component of the RFC analysis is material to the alternate employment that the VE and ALJ concluded Plaintiff could perform.

Though the ALJ found that the opinions of Drs. Israel and Ettigi were internally inconsistent and unsupported by their own treatment notes, and he properly found that they were not entitled to controlling weight, the ALJ did not consider and evaluate Dr. Odulana's opinion, and the Court therefore recommends a finding that the ALJ's decision is not supported by substantial evidence or application of the correct legal standard where Dr. Odulana's opinion is material to the ALJ's ultimate decision.

> **B.** **Plaintiff contends that the ALJ erred by posing a hypothetical to the VE that had no evidentiary support in the record**.

Plaintiff argues that the ALJ's hypothetical mRFC has no support in the record. (Pl.'s Mem. at 5-6.) More specifically, Plaintiff argues that the non-examining state agency medical consultants never cited any of the elements of the ALJ's mental findings. (Pl.'s Mem. at 5.) At the fifth step of the sequential analysis, the Commissioner must show that, considering the

claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). As noted earlier, the Commissioner can carry his burden in the final step with the testimony of a VE, but the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

The ALJ concluded that Plaintiff's mental state allows her to work with limited contact with the general public and in a stable environment with few changes in duties and/or settings. (R. at 17.) Further, the ALJ determined that Plaintiff is limited to simple, routine work. (R. at 17.) The state physician, Dr. Stephen Saxby, found that Plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods of time, and perform activities within a schedule; she was also able to maintain regular attendance and be punctual within customary tolerances. (R. at 309.) Drs. Alan Entin and Saxby both determined that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment. (R. at 311, 387.) Further, Plaintiff testified that she went to church, attended a women's group, and occasionally utilized public transportation. (R. at 19, 33, 45.) The physicians' findings and Plaintiff's testimony are consistent with the ALJ's mRFC and the hypothetical of an individual who is limited to work involving short, simple instructions; doing simple, routine work; with limited or occasional contact with the general public; and only occasional workplace changes, such as a change of setting. (R. at 55.)

Additionally, and as noted above, with regards to Plaintiff's mental impairments, Plaintiff conceded in 2006 that she had anxiety and panic attacks for "6+ years." (R. at 411-412.) The time-frame includes years during which Plaintiff worked full time. (R. at 156.) Plaintiff does not allege significant deterioration of her condition between the time she worked with her condition and the onset of her disability, and thus cannot claim that the condition is disabling. See Craig v. Charter, 76 F.3d 585, 596 n.7 (4th Cir. 1996) (superceded on other grounds) (citing Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970)).

Plaintiff also contends that "call out operator," one of the possible occupations the ALJ identified for which Plaintiff was capable of performing, is inconsistent with her restriction to limited public contact. (Pl.'s Mem. at 5-6.) The ALJ specifically posed a hypothetical in which there was only occasional contact with the general public. (R. at 55.) The VE considered vocations with that limitation, and still arrived at a call-out operator as an appropriate occupation. (R. at 55.) The Dictionary of Occupational Titles lists contact for call-out operator as "People: 6 - Speaking-Signaling - S - Significant." DICOT 237.367-014, 1991 WL 672186, (G.P.O.), 1991. However, the finding is still consistent because the mRFC assessment did not require that there be absolutely no contact. Even if the VE wrongfully chose the position of call-out operator, the VE also listed bench assembly work and surveillance system monitor as appropriate professions. (R. at 56.) Plaintiff does not contest the choice of either of those occupations. Under the Commissioner's regulations, "work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). Thus, even if call-out operator is not an appropriate profession, at least two other types of positions exist in significant numbers in the national

economy to support the ALJ's finding. (R. at 21.)

Finally, Plaintiff contends that "only occasional workplace changes such as a change of setting" is not the same as the ALJ's wording of "work in a stable environment with few changes in duties and or settings." (Pl.'s Mem. at 6, R. at 17, 55.) Plaintiff does not support her contention with any evidence as to the difference or its effect on the VE's determination. Without further support, Plaintiff does not meet her burden to show that such difference would have altered the ALJ's decision. See Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009). However, while the ALJ's hypothetical that was posed to the VE sufficiently addressed Plaintiff's mental impairments, it did not encompass the physical limitations identified by Dr. Odulana, assuming that the ALJ assigned any weight to his opinion, which the Court cannot discern, and, therefore, the hypothetical was fatally flawed and this Court recommends that a reversal and remand for further administrative proceedings is necessary for that reason as well.

### C. Plaintiff contends that the ALJ incorrectly assessed Plaintiff's credibility.

Finally, Plaintiff argues that the ALJ improperly adjudicated Plaintiff's credibility by taking into account Plaintiff's receipt of SSI benefits for her child. (Pl.'s Mem. at 6.) Specifically, Plaintiff contends that the ALJ should not disparage Plaintiff's credibility for receiving her child's SSI check when he was no longer in her care. (Pl.'s Mem. at 6.) While the Court recommends for other reasons that the case be remanded for further administrative proceedings, it is deemed constructive in any event to address the issue for possible future reference.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by

15

the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate

reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Although the ALJ found that Plaintiff had impairments which could reasonably produce her symptoms, in the second step of the Craig analysis the ALJ found that "the record reflects a greater level of activity than the Plaintiff's testimony." (R. at 18.) The ALJ considered written documentation of Plaintiff's activities, including cooking, laundry, ironing, shopping, and using public transportation. (R. at 18.) The ALJ also considered Plaintiff's ability to care for her child, medical evidence, and other evidence of record to make the credibility determination. (R. at 19-20.) For example, the ALJ noted that Plaintiff claimed to use oxygen "24/7," yet she was only prescribed oxygen for nighttime use. (R. at 19, 27, 44, 49, 440-442.) The DDS report by Dr. Robert Chaplin also states that "it does not seem that she needs the O2 for 24 hours." (R. at 292.)

Additionally, if an impairment can be reasonably controlled by treatment or medication, it cannot serve as the basis for disability. 20 C.F.R. §§ 404.1530, 416.930 (2009). Plaintiff's physical impairments could be controlled by treatment and/or medication. (R. at 216.) Plaintiff

17

controlled her sleep apnea with a C-PAP machine[6] (R. at 268, 419); Plaintiff's asthma specialist stated that Plaintiff had clear lungs with no wheezing and controlled her asthma with medication (R. at 248, 416); Plaintiff's lung function tests came up normal with a "mild" obstructive defect (R. at 313); Plaintiff's cardiac examination was negative (R. at 266); and Plaintiff controlled her pain with Percocet. (R. at 263, 265, 425.)

Furthermore, the ALJ only briefly mentioned in passing that keeping her son's SSI checks reflected poorly on Plaintiff's integrity. Consequently, it appears that this was not a substantial, nor the only rationale for his conclusion. (R. at 20.) Accordingly, where the ALJ did not err in making the credibility determination where it was reasonable, and did not contradict other findings of fact, it was based on substantial evidence. The Court therefore recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility are properly based on substantial evidence in the record and application of the correct legal standard, but that the case must still be remanded for further administrative proceedings and findings for other reasons.

## V. CONCLUSION

Although the Court concludes that the record does not provide substantial evidence to sustain the ALJ's conclusion that Plaintiff is not disabled, the Court is unable at the same time to recommend an outright award of benefits. The Court cannot make a finding that the ALJ properly considered and gave appropriate weight to the opinion and other evidence of record provided by Dr. Odulana, or posited a sufficient hypothetical to the VE. The Court is mindful of the prolonged period of time that the matter has been pending and, therefore, if remanded, it is

---

[6]Continuous Positive Airway Pressure. <u>Dorland's Illustrated Medical Dictionary</u> 434 (31st ed. 2007).

recommended that the ALJ expedite the process by reconsidering Plaintiff's application in light of this report and that a final administrative decision be issued in which all findings are sufficiently articulated and substantiated, as required for possible judicial review.

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be GRANTED; that Defendant's motion for summary judgment (docket no. 12) be DENIED; and, that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this report and recommendation.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                /s/
                                    DENNIS W. DOHNAL
                                    UNITED STATES MAGISTRATE JUDGE

Date: July 21, 2010
Richmond, Virginia